In re MALMART MORTGAGE
COMPANY, INC., Debtor.

Juan M. COFIELD, James
E. Cofield, Appellants,

v.

Harry S. GRAHAM, Trustee in Bank-
ruptcy of Malmart Mortgage
Company, Inc., Appellee.

Case No. 87–11681–CJK.
Civ. A. Nos. 92–12483–PBS, 92–12584–PBS.

United States District Court,
D. Massachusetts.

April 27, 1994.

Juan M. Cofield and James E. Cofield, pro se.

John F. Cullen, Robert O. Resnick, Cullen & Resnick, Boston, MA, for appellee.

### MEMORANDUM AND ORDER RE: MOTION TO DISMISS APPEALS

SARIS, District Judge.

This appeal arises out of the bankruptcy of Malmart Mortgage Company, Inc. ("Malmart") under chapter 7 of the Bankruptcy Code. *Pro Se* appellants James E. Cofield Jr. ("James") and Juan M. Cofield ("Juan"), brothers who are officers and shareholders of Malmart, appeal from four orders issued by the bankruptcy court: (a) the order denying the motions for recusal of the bankruptcy judge; (b) the order approving the Application of Harry Graham for Final Allowance of Compensation as Trustee and Overruling Objection of James E. Cofield, Jr.; (c) the order approving the Final Application of Cullen & Resnick for Allowance of Compensation and Reimbursement of Expenses as Counsel to Trustee; and (d) the order approving the Trustee's Motion for Authority to Destroy Estate Books and Records.

On October 26, 1992, the trustee, Harry Graham, filed a Motion to Dismiss on the ground that the Cofields lack standing to bring the appeals. A hearing was held on February 15, 1994, and the cases were consolidated on April 13, 1994 upon motion of the trustee, without opposition. The Court **ALLOWS** the motion to dismiss the consolidated appeal (the "appeal").

### BACKGROUND

The record supports the following undisputed facts. On October 29, 1987, the debtor Malmart filed a voluntary petition under chapter 11. The Federal National Mortgage Association ("FNMA") was the predominant unsecured creditor of Malmart with a claim aggregating $6 million or more. On February 26, 1988, the proceedings were converted to a chapter 7 liquidation. Harry Graham served as successor trustee of the chapter 11 estate, and then as the chapter 7 trustee.

Juan and James were principal officers and shareholders of the debtor. James Cofield was the President, Chief Executive Officer and majority stockholder. He also asserts that he is an unsecured creditor.

The trustee filed an application for an interim fee award, to which the Cofields objected on September 5, 1991. A hearing was scheduled for September 19, 1991 and was continued until October 9, 1991. An interim fee award of $100,000 was allowed on October 9, 1991. On that day, the Cofields and the trustee resolved an adversary action in the bankruptcy proceedings, entitled *Harry Graham as Trustee for Malmart Mortgage Company, Inc. and Federal National Mortgage Association v. James E. Cofield, Jr., et al.,* A.P. No. 88–1022. The parties executed a Settlement and Mutual General Release Agreement ("the agreement"), whereby both the trustee and the Cofields agreed to waive all claims against each other. The agreement releases the parties and their attorneys from, among other things, all claims, rights, liabilities, costs, and expenses ("including without limitation, attorneys fees") which any party had or may have against the other party arising out of or are in any manner "directly or indirectly, connected with or related to any of the events or transactions expressed in the pleadings in the Adversary proceeding, or the *underlying Bankruptcy*

*Action."* (emphasis added). The agreement expressly did not release claims or causes of action that FNMA had against the Cofields, or the Cofields had against FNMA.

Also, on that day, the Court allowed the interim fee application of $100,000.

As a result of the settlement, the bankruptcy court dismissed the adversary proceeding on November 20, 1991. While that dismissal may have been erroneous in light of the pending claims between the Cofields and FNMA, which were not covered by the release, neither FNMA nor the Cofields moved for reconsideration or appealed the dismissal. Indeed that allowance is not an issue raised by these appeals.

On January 31, 1992, the trustee filed his Final Account, his Application for Final Allowance of Compensation as Trustee ("trustee fee application") for $150,000 and the Final Application of Cullen & Resnick for Allowance of Compensation and Reimbursement of Expenses as Counsel to Trustee ("counsel fee application") in the amount of $394,518.94. On February 11, 1992, the Trustee filed a Motion for Authority to Remove and Destroy Estate Books and Records ("motion to destroy records"). On May 26, 1992, the Cofields filed Motions for the Recusal of Judge Carol J. Kenner. They did not file any written objections to the Final Account, the trustee fee application, the counsel fee application or the motion to destroy records. On August 20, 1992, the court entered its orders denying the motions to recuse and approving the motion to destroy records. On August 21, 1992, a hearing was held on the Trustee's Final Account, the trustee's fee application and the counsel fee application. James attended the hearing; Juan did not.

The Cofields did not file any written objections to the fee applications of either the trustee or his counsel. However, James orally objected to the trustee's fee application. Citing the terms of the Settlement and Mutual General Release Agreement, the court overruled his objection. On August 21, 1992, the court entered orders allowing both fee applications. On August 28, 1992, James filed his Notice of Appeal with the bankruptcy court and on August 31, 1992 Juan filed his Notice of Appeal.

Malmart is an insolvent entity. As of January 31, 1992, chapter 7 Administrative Claims amount to $570,433.00, chapter 11 administrative claims amounted to $455,-264.45, and chapter 11 priority wage, deposit and tax claims amounted to $1,171,890.00. There are unsecured claims from creditors in the amount of $13,049,015.00. There was approximately $956,000 in the debtor estate.

Because there was no stay in effect, the trustee distributed $709,465.41 to all administrative and priority creditors, including chapter 7 and chapter 11 professional fees. All priority wage consumer deposit and chapter 7 and chapter 11 administrative claims have received 100 percent distribution. Priority tax claimants have received a distribution of 20 percent. The trustee is holding a reserve of $100,000, which will be distributed to tax claimants when the case is closed.

## DISCUSSION

### 1. *Standing*

The trustee contends that the Cofields lack standing as persons aggrieved to bring these appeals. "The requirement of appellate standing in bankruptcy proceedings derives from Section 39(c) of the former Bankruptcy Act of 1898. 11 U.S.C. § 67(c) (1976) (repealed 1978)." *In re El San Juan Hotel,* 809 F.2d 151, 154 (1st Cir.1987) (*"San Juan"*). "Under this section, the right of appellate review in bankruptcy proceedings has historically been limited to persons aggrieved, i.e., to those persons whose rights or interests are directly and adversely affected pecuniarily by the order or decree of the bankruptcy court." *Id.* (citing *Fondiller v. Robertson (In re Fondiller)*), 707 F.2d 441, 442–43 (9th Cir.1983) (wife of debtor had no standing to appeal appointment of special counsel to pursue assets of debtor allegedly concealed by her); *see also Pignato v. Dein Host, Inc. (In re Dein Host, Inc.)*, 835 F.2d 402, 405–07 (1st Cir.1987) (only lessor corporation, not its shareholder, had standing to challenge an order allowing the debtor to assume a lease). Although this section does not have a direct counterpart in the provisions of the current Bankruptcy Code, the courts have adopted

this rule as a reasonable threshold for standing. *San Juan,* 809 F.2d at 154–56.

In order to qualify as a "person aggrieved," the appealed order must diminish a litigant's property, increase his burdens or impair his rights. *Id.* at 154. "Thus, a hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate, since such an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights." *Id.* at 154–55. As a general rule, only the trustee has standing to appeal from a bankruptcy court order, except if: (1) a successful appeal by the debtor creates an estate that has assets in excess of liabilities; or (2) an appeal from an order affects the terms of a debtor's discharge. *Id.* at 155 n. 6. "The rule of appellate standing is necessary to insure that bankruptcy proceedings are not unreasonably delayed by protracted litigation that does not serve the interests of either the bankrupt's estate or its creditors." *Id.* at 154. *See generally* 1 *Collier on Bankruptcy* ¶ 3.03[5] (15th ed.1993).

Even if this court were to conclude that the fees are excessive, Malmart's liability to asset ratio is so high that it would still not qualify as a person aggrieved. Because Malmart is a hopelessly insolvent debtor, the Cofields do not have a remote possibility of recovering from the bankrupt estate as creditors or shareholders of the debtor. *Cf. In re Central Ice Cream Co.,* 62 B.R. 357, 360 (N.D.Ill.1986) ("The mere fact that [debtor's] stock might change in value as a result of the court's action is not enough to confer standing upon the shareholders.").

### 2. *"Responsible Party"*

James Cofield[1] insists, however, that he has a pecuniary stake in the appeal because he may be a "responsible party" under 26 U.S.C. § 6672, which provides, in relevant part:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable for a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

The Cofields argue that the bankruptcy court's allowance of excessive fees directly affects them because the bankrupt estate will be unable to pay the amount owed to the Internal Revenue Service and Department of Revenue, and consequently, they will have to pay a commensurately higher penalty in the amount of the unpaid taxes.

In certain circumstances, a "responsible person" may have a personal stake in the outcome of a controversy sufficient to give him standing to appeal an order of the bankruptcy court. *See, e.g., F.A. Dellastatious, Inc.,* 121 B.R. 487, 490 (E.D.Va.1990) (the debtor's "responsible persons" are the real parties in interest with standing to appeal an order denying request that IRS allocate payments first to debtors trust fund tax liability because their personal liability would be reduced pro tanto).

As a preliminary matter, the Cofields have produced no evidence that they have received a notice and demand for payment by the Internal Revenue Service ("IRS") pursuant to 26 U.S.C. § 6672(b)(1). However, even assuming that the Cofields are responsible parties, they have not demonstrated that they are directly and adversely affected by the bankruptcy court's order allowing the applications for trustee's fees and attorney's fees. The record does not reflect what portion of the tax liability of the debtor is attributable to employer "trust funds" which the Cofields were required to collect. Further, the Cofields present no evidence specifying the magnitude of any excessive fees. Therefore, the court would have no basis whatsoever for determining whether any excessive fees would reduce the Cofields' tax liability.

Even if the court were to find the fees sufficiently excessive to have a possible impact on the Cofields' tax liability in a chapter 7 bankruptcy, the IRS is not required, in the absence of a court order or an agreement, to

---

1. There is no evidence that Juan Cofield is a "responsible party" with potential tax liability.

allocate those additional funds as payment for amounts for which the Cofields are liable as responsible persons. *See, e.g., F.A. Dellastatious, Inc.,* 121 B.R. at 491–93 (equitable reasons did not exist for bankruptcy court to direct that all amounts distributed out of chapter 7 corporate debtor's estate to the IRS be allocated first to debtor's trust fund tax liability); *cf. Olson v. United States,* 133 B.R. 1016, 1018 (D.Neb.1991) (absent an allocation agreement between responsible person and IRS in chapter 11 bankruptcy proceeding, IRS was entitled to allocate taxpayer's voluntary payments to tax obligations not subject to "responsible person" liability, even though the allocation increased responsible person assessments against taxpayer), *adhered to and modified on reconsideration,* 161 B.R. 45 (D.Neb.1992), *aff'd,* 4 F.3d 562 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 636, 126 L.Ed.2d 594 (1993); *United States v. Energy Resources Co.,* 495 U.S. 545, 550–51, 110 S.Ct. 2139, 2142–43, 109 L.Ed.2d 580 (1990) (in chapter 11 proceedings, whether or not tax payments are voluntary, the bankruptcy court has the authority to order IRS to apply the payments to trust fund liabilities if the court determines that this designation is necessary for a reorganization's success).

### 3. *Release*

■ Even if they had standing as responsible parties, the Settlement and Mutual General Release Agreement precludes the Cofields from challenging the amount of fees charged by the trustees and the trustee's attorneys. The broad sweep of the express language of the agreement, which expressly includes claims involving the trustee's attorneys and their fees, bars any claim against the trustee and his attorney for excessive attorney's fees. At the time the parties entered into this agreement, the Cofields had a pending objection to the trustee's interim fee award. Accordingly, there can be no doubt that the parties intended that the agreement encompassed all disputes over fees charged by the trustee and his attorneys.

### 4. *Failure to Object*

■ Finally, it has long been settled that review of orders are limited to appeals by parties who have appeared before the bankruptcy court and presented "to the court evidence and legal authorities which will be of aid to the court in making its decision." *In re Mifflinburg Co.,* 54 F.Supp. 560, 561 (M.D.Pa.1944). "To permit [a] person who did not participate in proceedings of which they are on notice to complain of the result of such proceedings would cause unlimited confusion and even disrespect of the courts and their authority." *Id.* Once proper notice is given, attendance and objection are usually prerequisites to fulfilling the "person aggrieved" standard. *See Brady v. Andrew (In re Commercial W. Fin. Corp.),* 761 F.2d 1329, 1335 (9th Cir.1985); *cf. Sandra Cotton, Inc. v. Bank of N.Y.,* 87 B.R. 272, 274 (W.D.N.Y.1988) (where shareholder failed to intervene before bankruptcy court, he has no standing to appeal the order at issue).

Even accounting for their *pro se* status, appellants are on thin ice procedurally. They have presented no evidence that they specifically objected either orally or in writing to the application for counsel fees. There is similarly no evidence that they objected to the motion to destroy records on February 11, 1992, which was allowed on August 20, 1992 without objection and prior to hearing. *See* Bank.Ct.L.R. 26(A)(3)(a) ("If no objection is filed within seven (7) days of the filing and serving of the motion, the court may act with or without a hearing."). With respect to the application for trustee's fees, James objected orally to the fee application at the hearing on August 21, 1992, as evidenced by the bankruptcy court's order overruling the objection. However, Juan was not present, and James, acting *pro se,* is precluded from representing him. *See* Bank.Ct.L.R. 11(E). On July 13, 1992 James filed a general objection to all pending docket matters, which was overruled on July 20, 1992. This catchall objection does not meet the requirement of presenting the bankruptcy court with the reasons for his objection. At best, James has preserved his right to appeal the approval of the trustee fee. However, the Court dismisses that appeal for the reasons stated above.

## ORDER

The court **ALLOWS** the Trustee's motion to dismiss the appeal.