United States Court of Appeals,

Fifth Circuit.

No. 93-2718

Summary Calendar.

ROHM & HASS TEXAS, INC., Plaintiff-Counter Defendant-Appellee,

v.

ORTIZ BROTHERS INSULATION, INC., et al., Defendants,

Ortiz Brothers Insulation, Inc., Defendant-Counter Plaintiff-Cross Plaintiff-Appellant.

UNITED STATES of America, Defendant-Counter Plaintiff,

v.

THORPE PRODUCTS CO., Defendant-Counter Defendant-Cross Defendant-Appellee,

and

Metrobank, N.A., Intervenor-Defendant Appellee.

Sept. 20, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before JOLLY, WIENER and EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge:

In this appeal from an interpleader action, Defendant-Appellant Ortiz Brothers Insulation, Inc. ("Ortiz") seeks review of the district court's determination of the priority of payment to defendants from the interpleaded funds (the "Fund"). Although Ortiz itself continues to disavow any stake in the Fund, it urges that it was injured financially by the priority determined by the district court for distributing shares in the Fund to Ortiz's creditors. Ortiz insists that, as a result of the sequence of

1

distribution decreed by the court, Ortiz will be exposed to greater liability if it should ever file for bankruptcy or have to indemnify its officers for any payments that they might be required to make personally to cover the company's unpaid federal tax obligations. We conclude that, as such injuries are merely conjectural and hypothetical, they are insufficient to establish constitutional standing. We therefore dismiss this appeal.

I

FACTS AND PROCEEDINGS

This case concerns the sequence or priority of payments to various creditors of Ortiz from $189,850.69,[1] which Plaintiff-Counter Defendant Rohm & Hass Texas, Inc. ("Rohm") deposited into the registry of the district court when Rohm convoked the instant interpleader action. The Fund represents money concededly owed by Rohm to Ortiz, one of Rohm's contractors, for labor and materials supplied to a maintenance and repair project at a Rohm facility in Deer Park, Texas.

After Rohm filed this suit, three of Ortiz's creditors made competing claims to the Fund: (1) the IRS, claiming that Ortiz owed a tax debt of $245,673.61; (2) Thorpe Products Co. ("Thorpe"), a materialman claiming that Ortiz owed it $98,290.09 for supplies used in performing the Rohm construction contract; and (3) MetroBank, N.A. ("MetroBank"), a creditor with a perfected security interest in $80,861.30 of Ortiz's collateral and accounts

---

[1]As of July 23, 1993, the day judgment was entered, the Fund contained $193,603.70, which included principal plus interest.

receivable. Ortiz claimed no stake in the Fund, but argued that the claim of the IRS was superior in rank to that of Thorpe. The district court disagreed.

Ruling on cross motions for summary judgment, the district court ranked the IRS' claim last among the competing creditors. As the Fund was insufficient to satisfy all superior claims (plus attorney's fees),[2] the IRS took nothing.

After judgment was entered, both the IRS and Ortiz filed notices of appeal; but subsequently the IRS successfully moved to dismiss its appeal and no longer asserts a claim against the Fund. Still asserting no claim to the Fund, Ortiz continues to argue that the IRS' claim should be superior in rank to Thorpe's. MetroBank and Thorpe have moved to dismiss Ortiz's appeal for lack of standing.

II

ANALYSIS

A. STANDARD OF REVIEW

"In ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in

---

[2]On August 26, 1993, the court ordered the Fund to be distributed as follows: Thorpe's materialman's lien, $20,755.86 and $7,843.75 in attorney's fees; MetroBank's security interest, $80,861.30, $1,300.00 in interest, and $7,756.52 in attorney's fees; and the remainder of the fund, $75,086.27, was paid in partial satisfaction of Thorpe's trust fund claim of $77,534.23. As the distribution accounted for interest accrued only as of July 23, 1993, Thorpe and MetroBank were ordered to share the interest earned after that date in the ratio of 54/46.

3

favor of the complaining party."[3] We conclude that, even when viewed in this most favorable light, Ortiz's asserted injuries are insufficient to give it standing to appeal the district court's judgment.

B. STANDING

Article III standing implicates the federal judiciary's power to adjudicate disputes; it can be neither waived[4] nor assumed.[5] Merely because a party appears in the district court proceedings does not mean that the party automatically has standing to appeal the judgment rendered by that court.[6]

---

[3]*Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

[4]*See Boeing Co. v. Commissioner of Patents & Trademarks,* 853 F.2d 878, 881 (Fed.Cir.1988) ("The issue of standing calls into question the power of the court to hear and decide a case, and it is impossible for a party to waive this requirement."); *cf. Bumberger v. Insurance Co. of North Am.,* 952 F.2d 764, 766 (3rd Cir.1991) (stating that diversity jurisdiction of courts is not subject to waiver).

[5]*See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing "is perhaps the most important of [the jurisdictional] doctrines.' " (quoting *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (alteration in original)); *Mansfield, Coldwater & Lake Mich. Ry. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884) ("[T]he first and fundamental question is that of jurisdiction, first of this court, and then of the court from which the record comes.").

[6]*See Diamond v. Charles,* 476 U.S. 54, 68, 106 S.Ct. 1697, 1706, 90 L.Ed.2d 48 (1986). In *Diamond,* the Court stated,

> Diamond's status as an intervenor below, whether permissive or as of right, does not confer standing sufficient to keep the case alive in the absence of the State on this Appeal. Although intervenors are considered parties entitled, among other things, to

4

Whether a party has standing to appeal "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."[7]

> In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy' between himself and the defendant within the meaning of Article III.... The Article III judicial power exists only to redress or otherwise to protect against injury to the complaining party.... A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury from the putatively illegal action.'[8]

Accordingly, a party generally may not appeal a district court's order to champion the rights of another,[9] and even "[a]n indirect

---

> seek review by this Court, an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III.
>
> *Id.* (citations omitted); *see also Boeing Co.,* 853 F.2d at 881 (rejecting argument that as parties failed to object to intervenors appearance below, the parties waived any objection to intervenor's standing to pursue an independent appeal); *Nationwide Mut. Fire Ins. Co. v. Eason,* 736 F.2d 130, 134 (4th Cir.1984) (plaintiff-interpleader that disclaimed interest in fund lacked standing to appeal ultimate disposition of fund); *Libby, McNeill, & Libby v. City Nat'l Bank,* 592 F.2d 504, 512 (9th Cir.1978) (finding that defendant in interpleader action lacked standing to appeal judgment that indirectly affected its pecuniary interests, but primarily impacted liability of another party).

[7]*Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). As we find that Ortiz lacks constitutional standing to appeal, we do not reach—and therefore do not consider—any prudential limitations.

[8]*Id.* at 498-99, 95 S.Ct. at 2204-05 (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973)).

[9]*See Morrison-Knudsen Co. v. Chg Int'l, Inc.,* 811 F.2d 1209, 1214 (9th Cir.1987) (noting that party may appeal to protect only

financial stake in another party's claims is insufficient to create standing on appeal."[10]  In addition, "[t]he injury or threat of injury must be both "real and immediate' not "conjectural' or "hypothetical,' "[11] and the putative appellant shoulders the burden of alleging facts sufficient to demonstrate that it is a proper party to appeal.[12]

C. ORTIZ'S ALLEGED INJURIES

Conceding that it claims no interest in the Fund, Ortiz maintains that it nevertheless has standing to appeal the district court order because the priority of distribution of the Fund among Ortiz's creditors might affect Ortiz's liability should the company eventually (1) file for bankruptcy, or (2) have to indemnify its

_____

its own interests), *cert. dismissed,* 488 U.S. 935, 109 S.Ct. 358, 102 L.Ed.2d 349 (1988); *see also Libby, McNeill, & Libby,* 592 F.2d at 512 ("[A] party may only appeal to protect its own interests, and not those of a coparty."); *Estate of Bishop v. Bechtel Power Corp.,* 905 F.2d 1272, 1276 (9th Cir.1990) (" "[A] party may only appeal to protect its own interests, not those of any other party.' " (quoting *Bryant v. Technical Research Co.,* 654 F.2d 1337, 1343 (9th Cir.1981) (alteration in original))).

[10]*Morrison-Knudsen Co.,* 811 F.2d at 1214; *see Estate of Bishop,* 905 F.2d at 1276 (quoting *Morrison-Knudsen Co.).*

[11]*O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) (quotations omitted); *accord NLRB v. Dredge Operators Inc.,* 19 F.3d 206, 213 (5th Cir.1994) (finding "speculative" scenario not ripe for review).

[12]*FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)); *see Boeing Co. v. Commissioner of Patents & Trademarks,* 853 F.2d 878, 880 (Fed.Cir.1988) ("In order to establish standing on appeal, [a putative appellant] must show that it has suffered some actual or threatened injury." (citing *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *Warth,* 422 U.S. at 498-99, 95 S.Ct. at 2204-05)).

officers if they should ever be required personally to pay on the company's tax liability.[13]

In particular, Ortiz explains that it is aggrieved by the district court judgment's assigning the priority in which its creditors are to be paid from the Fund, as Ortiz's debt to one creditor, Thorpe, is fully dischargeable in bankruptcy,[14] while its debt to another, the IRS, is not.[15] Moreover, Ortiz raises the inchoate possibility that the IRS could one day look to Ortiz's officers for payment of the tax debt.[16] And, according to Ortiz, under Texas law the company is *required* to indemnify its officers for personal liability for the company's taxes to the extent the officers incur such liability while executing their duties. Ortiz insists therefore that ultimately the company might have to shoulder responsibility by way of indemnification for any taxes collected from company officers by the IRS. It follows, Ortiz concludes, that the district court judgment injured Ortiz financially by assigning the IRS the lowest priority among claimants to the Fund, thereby injuring Ortiz sufficiently to

---

[13]Although in its brief Ortiz argues that it might be required to indemnify its "officers," we note that the Texas statute to which Ortiz cites provides only for the indemnification of "directors." *See* TEX.BUS.CORP. ACT ANN. art. 2.02-1(E) (West 1994). For the purposes of our discussion, however, we will assume that Ortiz's officers also are directors or that they otherwise would be entitled to the protection of the statute.

[14]*See* 11 U.S.C. § 727 (1988).

[15]*See id.* § 523(a).

[16]*See* 26 U.S.C. § 6672(a).

confer standing to appeal. We consider each alleged injury in turn to determine whether either is sufficient to satisfy Article III standing.

1. *Liability in Bankruptcy*

At the outset, it is important to analyze the precise nature of the injury of which Ortiz complains. Ortiz does not state that it has filed, will file, or even anticipates filing for bankruptcy. Ortiz merely asserts that, as a result of the district court judgment's ranking the IRS last among Fund claimants, the company *might* be exposed to greater liability *if* it ever should elect to declare bankruptcy or be placed in bankruptcy involuntarily. We are convinced, however, that Article III pretermits consideration of such a conjectural and hypothetical injury on appeal—a conclusion we reach based in large part on analogous decisions by other federal courts of appeals.

In the first instance, it is not even clear whether, after disavowing a stake in the Fund, Ortiz could allege any injury sufficient to give it standing to appeal the sequence or priority for distributing the money to other defendants with recognized claims to shares of the Fund. In *Nationwide Mutual Fire Insurance Co. v. Eason,*[17] the Fourth Circuit held that a *plaintiff* -interpleader who claimed no stake in a fund interpleaded into bankruptcy court lacked standing to appeal the bankruptcy court's distribution of the fund. In *Nationwide,* the money was deposited into the registry of a bankruptcy court for the benefit of unpaid

_____

[17]736 F.2d 130, 134 (4th Cir.1984).

8

creditors of a grain dealer that had filed for bankruptcy. After thus depositing the funds, the plaintiff-interpleader asked to be dismissed from the action, but apparently never was. When six months elapsed without any defendant responding to the action, the court entered a default judgment against all defendants.

Subsequently, when the trustee of the bankrupt estate moved to intervene in the interpleader action, alleging that the funds were part of the estate, the plaintiff-interpleader asked that the funds be returned to it instead. The bankruptcy court denied the plaintiff-interpleader's request that the funds be returned, and the plaintiff-interpleader appealed.

The Fourth Circuit held that the plaintiff-interpleader lacked standing to appeal the distribution of the fund because it had previously disavowed any stake in the money. The court noted that "[a]ny challenge to the disposition ultimately made by the bankruptcy court must be by parties with the requisite stake in the outcome."[18] Here we need not go so far, however, because, even if

_____

[18]*Id.* As Article III is inapplicable to bankruptcy courts, standing to appeal in a bankruptcy proceeding derived originally from statute, granting the right to appeal only to "persons aggrieved." *In re El San Juan Hotel,* 809 F.2d 151, 154 (1st Cir.1987); *In re Malmart Mortgage Co.,* 166 B.R. 499, 501 (D.Mass.1994). Although the applicable statute has since been repealed, bankruptcy courts still limit appellate standing to those "aggrieved." *El San Juan Hotel,* 809 F.2d at 154; *Malmart Mortgage Co.,* 166 B.R. at 501.

To determine Article III standing, courts also look to whether the appellant was "aggrieved" by the district court decision. *See, e.g., ICC v. Holmes Transp., Inc.,* 983 F.2d 1122, 1125 n. 4 (1st Cir.1993) (" "To have standing to appeal, an appellant ordinarily must have been a party to the proceeding below, and have been aggrieved by the order appealed from....' " (quoting *United States v. Little Joe*

9

we assume arguendo that Ortiz might be able to allege an indirect interest in the Fund sufficient to give it standing to appeal, it has failed to do so.

As Ortiz disavows a direct stake in the Fund, any interest that it asserts necessarily must be indirect.  Indeed, injuries far more direct than those here alleged by Ortiz have been found to be too remote to satisfy standing for the purposes of Article III.  For example, in *Libby, McNeill, & Libby v. City National Bank,*[19] the Ninth Circuit held that a defendant-appellant, City National Bank ("CNB"), lacked standing to appeal a district court's judgments against a plaintiff-interpleader, Libby, McNeill, & Libby ("Libby"), even though those judgments reduced the amount of money that CNB recovered from the interpleader fund.

Pursuant to a lending agreement, CNB had obtained a security interest in the accounts receivable of Shanghai Instant Foods, Inc. ("Shanghai"), a company that produced packaged frozen meals for Libby.  The contract between Shanghai and Libby provided that

---

*Trawlers, Inc.,* 780 F.2d 158, 161 (1st Cir.1986)); *Great Am. Audio Corp. v. Metacom, Inc.,* 938 F.2d 16, 19 (2d Cir.1991) (per curiam) ("In order to have standing to appeal, a party must be aggrieved by the judicial action from which it appeals."); *HCA Health Servs. v. Metropolitan Life Ins. Co.,* 957 F.2d 120, 124 (4th Cir.1992) ("An injury in fact is required for a party to be aggrieved for purposes of being able to appeal...."); *Goldstein v. Andresen & Co.,* 465 F.2d 972, 973 n. 1 (5th Cir.1972) (per curiam) ("[O]nly a party aggrieved by a final judgment may appeal from it."); *Estate of Bishop v. Bechtel Power Corp.,* 905 F.2d 1272, 1276 (9th Cir.1990) (" "To have standing to appeal, a party must be aggrieved by the district court's order.' " (quoting *Bryant v. Technical Research Co.,* 654 F.2d 1337, 1343 (9th Cir.1981)).

[19]592 F.2d 504, 512 (9th Cir.1978).

Shanghai would produce meals according to Libby's specifications and obtain ingredients and materials from suppliers either recommended or approved by Libby.

Subsequent to entering into this contract, some suppliers notified Libby that Shanghai had stopped paying for its deliveries, and shortly thereafter, Shanghai filed for bankruptcy. While the bankruptcy proceedings were pending, Libby commenced an interpleader action in district court, depositing into the court's registry the net sum it owed Shanghai and naming as defendants the trustee in bankruptcy, various unpaid suppliers, and CNB.

CNB was the only defendant to allege an interest in the fund, but some unpaid suppliers counterclaimed, alleging that Libby was liable to them in contract for deliveries provided to Shanghai. The district court found for the suppliers on their counterclaims, but permitted Libby to offset the amount of these judgments against Libby's obligation to Shanghai. As a result, the amount of money in the interpleader fund was reduced by the sum of these offsets. Libby did not appeal these adverse judgments.

As the sole beneficiary of the interpleaded fund, CNB sought to appeal, inter alia, the suppliers' judgments against Libby. The Ninth Circuit, however, held that CNB lacked standing to appeal these adverse judgments, even though the amount of CNB's recovery from the fund was reduced by the amount of these judgments. The court expressly recognized that "this is not the simple case where the outcome of the appeal can have absolutely no effect on the interests of the appellant," but noted that CNB nevertheless had

11

"no *direct interest* in the counterclaims of [other defendants]."[20] Recognizing that an appellant's interest "must be immediate and pecuniary and not a remote consequence of the judgment,"[21] the court held that CNB lacked an appealable interest in the judgments against Libby. In the instant case, Ortiz's asserted injury—greater potential liability should it ever file for bankruptcy—is far more attenuated than the injury claimed by CNB in *Libby.*[22]

2. *Indemnification of Ortiz's Officers*

Ortiz's other alleged injury is similarly speculative and remote. Ortiz claims injury as a consequence of the court's rankings because the company's federal tax debt was not reduced by the amount in the Fund, given the court's assignment of the lowest priority to the IRS. Ortiz does not dispute the existence or amount of its debt to the IRS. Rather, Ortiz merely complains

---

[20]*Id.* at 511 (emphasis added); *see also Principal Mut. Life Ins. Co. v. Cincinnati TV 64 Ltd. Partnership,* 845 F.2d 674, 677 n. 1 (7th Cir.1988) ("The general rule is that a party may only appeal to protect its own interests, and not those of a nonparty or another party, unless the appellant has a direct financial stake in the appeal.").

[21]*Libby, McNeill, & Libby,* 592 F.2d at 511 (quotations omitted).

[22]*See also Brown v. Ferro Corp.,* 763 F.2d 798, 803 (6th Cir.) (stating that stockholder lacked standing to file derivative suit challenging officer's severance agreement program as payments were contingent on change of control and change of control was not presently foreseeable), *cert. denied,* 474 U.S. 947, 106 S.Ct. 344, 88 L.Ed.2d 291 (1985); *Solo Cup Co. v. Federal Ins. Co.,* 619 F.2d 1178, 1189 (7th Cir.) (finding mere possibility that insurer might commence proceedings to contest coverage of insured is insufficient to create "controversy" within meaning of Article III), *cert. denied,* 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980).

that, should the IRS ever look past the company to its officers for satisfaction of this tax debt, then these officers will be liable for a larger amount;  and, as Ortiz posits that Texas law requires it to indemnify its officers under such circumstances, the company will ultimately have to pay more in indemnification.

First, Ortiz misstates Texas law:  Corporations are not *required* to indemnify officers from such liability—they are merely *permitted* to do so.[23]  As Ortiz has not alleged that it took the steps necessary to indemnify its officers, the record is devoid of facts showing that the company would be legally responsible to indemnify its officers for any ultimate liability they incur for the corporation's tax debts.[24]

Second, as with its allegations of liability in bankruptcy, even if we assume arguendo that Ortiz would owe indemnity to its officers, its argument is completely speculative.  Ortiz presents no evidence that the IRS has looked, anticipates looking, or even could look to the corporation's officers to satisfy Ortiz's tax debt.[25]  In short, Ortiz has failed utterly to demonstrate that any

---

[23]TEX.BUS.CORP. ACT ANN. art. 2.02-1(E) (West 1994) ("A person *may* be indemnified ... against ... penalties (including excise and similar taxes)...."  (emphasis added)).

[24]*See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) ("It is a long-settled principle that standing cannot be "inferred argumentatively from averments in the pleadings,' but rather "must affirmatively appear in the record.' "  (quotations omitted);  *Mansfield, C. & L.M. Ry. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884) (facts supporting Article III jurisdiction must "appea[r] affirmatively from the record").

[25]*See In re Malmart Mortgage Co.,* 166 B.R. 499, 502 (D.Mass.1994) (finding shareholder/officer of bankrupt company

13

action by the IRS against company officers is a real or immediate likelihood or how such an action would adversely affect the company in the least.  Finally, we must note that Ortiz's concern regarding indemnification rings hollow when even this remote possibility of indemnification could not arise unless the company should fail to pay its own tax debt in the first place.[26]

III

CONCLUSION

As we find that Defendant-Appellant Ortiz has failed to allege an injury sufficiently real and immediate to satisfy the requirements for standing under Article III, this appeal is DISMISSED.

---

lacked standing to appeal bankruptcy court's award of attorney's fees from company's estate as excessive, because (1) there was no evidence that shareholder/officer was a "responsible party" with potential tax liability and (2) the IRS had not yet made demand for payment under § 6672).  *Cash v. United States,* 961 F.2d 562, 565-66 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 492, 121 L.Ed.2d 430 (1992), is not to the contrary.  In *Cash,* we found that shareholders/officers of a corporation had standing to appeal the method by which the IRS levied the assets of their corporation.  In that case—unlike here—the IRS already had looked to the shareholders/officers for payment, had determined them to be "responsible persons" who willfully failed to pay over withholding taxes, and had taken steps to collect the unpaid tax debt.

[26]As our decision that Ortiz lacks standing to pursue this appeal is conclusive, "there is an end of the matter" and we do not consider the merits of the appeal.  *International Longshoremen's & Warehousemen's Union v. Boyd,* 347 U.S. 222, 223, 74 S.Ct. 447, 448, 98 L.Ed. 650 (1954).