IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-60833
_____


In The Matter Of: REBECCA MITCHELL BARRON

            Debtor

------------------------

CYNTHIA DANIELS

            Appellant

    v.

REBECCA MITCHELL BARRON; JOHN A BARRON; CHARLES EASLEY

            Appellees

_____

Appeal from the United States District Court
for the Northern District of Mississippi
_____
August 28, 2000

Before KING, Chief Judge, and PARKER, Circuit Judge, and
FURGESON[*], District Judge.

KING, Chief Judge:

    Attorney Cynthia Daniels seeks review of a district court

order affirming a bankruptcy court order approving her

compensation in an amount less than that prayed for in her

---

[*] District Judge of the Western District of Texas, sitting
by designation.

application for compensation.  For the reasons that follow, we reverse and remand.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Rebecca Mitchell Barron and John Barron were divorced in 1994.  Under the terms of their separation agreement, Mrs. Barron conveyed her interest in five tracts of real property to Mr. Barron.  As part of the same agreement, Mr. Barron was to make four installment payments to Mrs. Barron totaling $210,000.  Mr. Barron paid the first installment of $50,000, but failed to make any subsequent payments.

In February 1995, the Barrons remarried.  Mr. Barron did not re-deed any interest in the five properties to Mrs. Barron.  Mrs. Barron, however, forgave the balance of the $210,000 owed her under the separation agreement.  Shortly thereafter, she filed a voluntary Chapter 7 bankruptcy case.

In September 1995, the Chapter 7 trustee (the "Trustee") filed an application seeking the appointment of Daniels as Attorney for the Trustee.  The application stated that Daniels was "willing to work on a one-third (1/3) contingency basis of the amount recovered in the filing of any preferential and/or fraudulent complaints, if warranted."  Application For Employment of Attorney Specially, filed Sept. 28, 1995, at 1, In re Barron, No. 95-10538 (Bankr. N.D. Miss.).  Both Randolph Lipscomb, Mrs.

2

Barron's divorce attorney and a creditor of the Chapter 7 estate, and Mrs. Barron filed objections to the application. At a hearing on the Trustee's application to employ Daniels,[1] Lipscomb's attorney argued that appointment was premature because this was likely an easy case that would simply require Daniels to make a demand for the sums due under the settlement agreement. Also, the attorney drew to the court's attention the extent of the debt owed to Mrs. Barron under the settlement agreement. See Transcript of Hearing, Nov. 17, 1995, at 5, In re Barron, No. 95-10538 (Bankr. N.D. Miss.) ("[I]f the court will look to page four which is paragraph 8A in the separation agreement, part of a court order approving divorce, and it provides for two hundred 10 thousand [sic] dollars in lump sum alimony, the money in four scheduled payments, the first of which was [due on] June 22, 1994, the second June 22, 95, [sic] the third installment in 1996 and the 4th in 97 [sic]."). In November 1995, the bankruptcy court approved the Trustee's application, conditioning approval of Daniel's contingency fee upon an actual suit being filed against Mr. Barron following filing of a demand letter.[2]

---

[1] Mrs. Barron withdrew her objection prior to the hearing.

[2] The bankruptcy court found that there was an "extreme likelihood of litigation in this matter at some point in time," but expressed no view on the expected length or difficulty of any such litigation. In re Barron, No. 95-10538 (Bankr. N.D. Miss. Nov. 30, 1995) (Order Approving Employment of Attorney Specially).

In March 1996, Daniels, acting on behalf of the Trustee, filed a complaint against Mr. Barron. In April 1997, she moved for summary judgment. After Mr. Barron filed a responsive pleading, the bankruptcy court held a telephonic hearing, during which it informed the parties that the terms of the separation agreement remained in effect even after the Barrons' remarriage. Accordingly, in August 1997, the court granted judgment against Mr. Barron in the amount of $160,000, the amount owed Mrs. Barron under the separation agreement.

Daniels then filed an application for compensation seeking $53,333.33, one-third of the recovery. Objections were filed by the Barrons and a creditor who objected to payment of Daniels's fee in priority to his claim. The bankruptcy court held a hearing, at the conclusion of which Daniels was asked to prepare an itemization of her charges. In November 1997, the bankruptcy court entered an order approving compensation for Daniels in the amount of $24,431.25 with an additional expense allowance of $2,500.00. In an accompanying opinion, the bankruptcy court concluded that its approval of the contingency fee had been improvident. Daniels appealed from this order to the district court. The district court affirmed, and Daniels filed this timely appeal.

## II. DISCUSSION

4

A bankruptcy court's determination of attorney's fees is reviewed for abuse of discretion. See In re Fender, 12 F.3d 480, 487 (5th Cir. 1994). "'The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)) (alteration in original). "The bankruptcy court's conclusions of law are reviewed de novo." In re Texas Securities, Inc., No. 99-11012, 2000 WL 955621, at *2 (5th Cir. Jul. 7, 2000).

Section 328 of the Bankruptcy Code allows an attorney seeking to represent a bankruptcy estate to obtain prior court approval of her compensation plan. See 11 U.S.C. § 328(a) ("The trustee . . . may employ or authorize the employment of a professional person under section 327 or 1103 of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis."); In re National Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997) ("Under present § 328 the professional may avoid . . . uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee)."). Under § 328, once a compensation plan has received bankruptcy court approval, "the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of

5

such employment, if such terms and conditions prove to have been improvident in light of developments <u>not capable of being anticipated</u> at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a) (emphasis added).

On appeal, Daniels argues that the bankruptcy court erred in modifying her pre-approved compensation plan absent a proper finding to support a conclusion that the contingency fee was "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  <u>Id.</u>  In its opinion on the matter, the bankruptcy court stated its understanding of the applicable law as follows:

> The law, applicable to the issue now before this court, has been clearly delineated by the Fifth Circuit Court of Appeals in <u>Matter of Nat. Gypsum Co.</u>, 123 F.2d 861 (5th Cir. 1997) decided October 8, 1997.  Judge Reavley, writing for the court, stated the following:
>
>> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. [Footnote omitted]  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.   Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).   Thereafter, that approved compensation may be changed only for the following reason: "Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."

The court must therefore set the compensation award either according to § 328 or § 330. If prior approval is given to a certain compensation, § 328 controls and the court starts with that approved compensation, <u>modifying it only for developments unforeseen when originally approved</u>. If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment. Courts must protect those agreements and expectations, once found to be acceptable.

<u>In re Barron</u>, No. 95-10538, at 6 (Bankr. N.D. Miss. Nov. 4, 1997) (quoting <u>National Gypsum</u>, 123 F.3d at 862-63) (emphasis added).

It is obvious from the bankruptcy court's discussion in its opinion that it relied on our statement in <u>National Gypsum</u> that approved compensation could be modified for "developments unforeseen when originally approved." The bankruptcy court stated:

At the time of the approval of the contingency fee arrangement, the court did not anticipate the substantial amount of the subsequent recovery resulting from the fraudulent conveyance cause of action against Mr. Barron. . . .

The fraudulent conveyance suit never went to trial. Once the court reviewed the motion for summary judgment filed on behalf of the trustee, the outcome was easily determined . . . .

. . . .

Speaking in sports parlance, this adversary proceeding became a "slam dunk." It was not perceived as such when the contingency fee application was approved.

<u>Id.</u> at 7-8. In doing so, the bankruptcy court applied the incorrect legal standard.

7

Although both <u>National Gypsum</u> and <u>Texas Securities</u>, which cites <u>National Gypsum</u>, involved a challenge to the bankruptcy court's determination of the appropriate amount of compensation to award an attorney, each of those cases turned on the question of whether the bankruptcy court had erred by applying § 330 rather than § 328. In neither case were we required to construe § 328 or determine whether developments relied upon by the bankruptcy court were of the type contemplated by the provision. Our mention in both cases of "developments unforeseen" was simply a shorthand reference to the appropriate standard set forth in the statute: a bankruptcy court may only depart from a compensation scheme approved under § 328(a) "if such terms and conditions prove to have been improvident in light of developments <u>not capable of being anticipated</u> at the time of the fixing of such terms and conditions. 11 U.S.C. § 328(a) (emphasis added); <u>see also</u> <u>In re Reimers</u>, 972 F.2d 1127, 1128 (9th Cir. 1992). The bankruptcy court here should have relied upon the plain language of the statute rather than our shorthand reference to it. It is not enough that the developments were simply unforeseen. We leave to the bankruptcy court the task of applying the correct legal standard in the first instance.

**III. CONCLUSION**

8

For the foregoing reasons, we REVERSE the district court's affirmance of the bankruptcy court's order and REMAND for further proceedings consistent with this opinion.