United States Court of Appeals
Fifth Circuit

**F I L E D**

December 20, 2004

Charles R. Fulbruge III
Clerk

**REVISED DECEMBER 30, 2004**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

Nos. 03-10268, 04-10173

———————————————

In The Matter Of: COHO ENERGY INC

Debtor

————————————————————————————

GIBBS & BRUNS LLP

Cross-Appellee,

versus

COHO ENERGY INC

Appellee – Cross-Appellant,

versus

THOMAS & CULP LLP

Appellant – Cross-Appellee.

————————————————————————————

COHO ENERGY INC

Appellee – Cross-Appellant,

versus

GIBBS & BRUNS LLP

Cross-Appellee,

THOMAS & CULP LLP

Appellant – Cross-Appellee.

————————————————————————————————————

In The Matter Of: COHO ENERGY, INC; COHO RESOURCES, INC

Debtors

————————————————————————————

GIBBS & BRUNS, LLP

Appellee,

1

versus

THOMAS & CULP LLP

Appellant.

---

Appeals from the United States District Court
For the Northern District of Texas

---

Before BENAVIDES, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The following case arises from two law firms' consecutive representation of a single debtor in a settlement of a breach of contract by a capital venture firm. Both firms and the debtor appeal the firms' fee awards from bankruptcy court, and one firm appeals the subsequent settlement between the other two parties. For the reasons below, this Court dismisses the settlement appeal and affirms the district court's fee award.

## I. FACTS AND PROCEEDINGS

Coho Energy, Inc. ("Coho") is a publicly traded oil and gas exploration and production company. In March, 1999, after a contract dispute for an infusion of capital from Hicks, Muse, Tate & Furst Equity ("Hicks Muse"), Coho hired law firm Thomas & Culp ("Thomas") to represent Coho in the resulting litigation. Thomas agreed to represent Coho for a thirty-percent contingent fee. Approximately three months later, Coho filed for Chapter 11 bankruptcy protection. The bankruptcy court approved Thomas as counsel in the Hicks Muse litigation and approved the contingent fee arrangement under 11 U.S.C. § 328 (authorizing the bankruptcy court to approve professionals' fees).

Upon confirmation of Coho's Chapter 11 Plan of Reorganization, the bankruptcy court appointed a new CEO and President, Michael Y. McGovern. He immediately wrote to the bankruptcy judge to address "problems that have arisen in the relationship between Coho and its counsel in the litigation involving Hicks, Muse." Coho subsequently fired Thomas and hired another law firm, Gibbs & Bruns ("Gibbs") to continue the Hicks Muse litigation. The bankruptcy court again approved a thirty-percent contingency fee arrangement, this time with Gibbs.

Coho and Thomas could not agree on what fees Thomas was owed for its work to prepare the litigation before it was fired. The fee agreement between Coho and Thomas contained an arbitration clause. Thomas moved the bankruptcy court for arbitration of the fee dispute in October, 2000. The court largely adopted Thomas's recommended order in January, 2001, which identified three discrete issues for the panel of arbitrators to decide: first, whether Thomas was terminated "for cause;" second, the reasonable fee that Thomas would be paid under a theory of quantum meruit; and third, the reasonably estimated sum of money Thomas would have earned under the contingent fee contract if it had not been fired (damages). The panel concluded in July, 2001 that Thomas was fired for cause, that the value of quantum meruit was $2.9 million and that, in the alternative, full contract damages were equal to $5.9 million. During the arbitration, Coho, represented by Gibbs, settled with Hicks Muse for $8.5 million. The arbitrators had not been informed of this settlement.

In January, 2002, the bankruptcy court heard a motion by Thomas to enforce the arbitration panel's quantum meruit finding, a motion by Coho to approve its $8.5 million settlement with Hicks Muse, and the application of Gibbs for its thirty-percent stake in the outcome of the Hicks Muse settlement according to its fee agreement. There was no objection either to Gibbs's application for $2.55 million—the thirty percent of the $8.5 million settlement—and the court awarded the amounts

3

on January 10, 2002. Also on January 10, 2002, the bankruptcy court reduced Thomas's arbitrated award of $2.9 million to $2.55 million due to the "unanticipated developments" of the low settlement amount, according to 11 U.S.C. § 328(a). On January 22, 2002, Thomas objected in the Northern District of Texas to the bankruptcy court's reduction of the arbitration award. On January 28, 2002, Coho moved the bankruptcy court to set aside the judgment and recommended that Thomas receive $956,000 in fees. Thomas replied, again arguing for the original arbitration award of $2.9 million.

On March 11, the bankruptcy court issued its final order, providing that the two law firms would split a single fee of $2.55 million. It calculated the fees using the $2.9 million amount that the arbitration panel awarded to Thomas and then adding to that amount $1.9 million, which the court believed would be an equally reasonable fee to pay Gibbs. Then, the bankruptcy court took the percentage of the total $4.9 million of each firm's quantum meruit amount and multiplied those percentages by $2.55 million, which is 30% of the Hicks Muse settlement amount. Based on this calculation, it ordered that $1,540,625 be paid to Thomas and $1,009,375 to Gibbs. Thomas and Coho cross-appealed this decision. On February 28, 2003, the district court found that, as to Thomas's fees, the bankruptcy court acted on a timely-filed motion and did not abuse its discretion. Thomas and Coho then appealed to this Court.

Also on February 28th, 2003, the district court vacated the bankruptcy court's reduction in Gibbs's fees for lack of jurisdiction. Coho appealed that decision. On March 7, 2003, Gibbs and Coho settled for $2.3 million. The bankruptcy court denied this settlement agreement on June 16, 2003. Gibbs appealed that decision to the district court, which affirmed the settlement, awarding Gibbs $2.3 million. Thomas then appealed that settlement and that appeal was challenged by Gibbs

4

for lack of standing. Both sides briefed the motion to dismiss the appeal for lack of standing and that appeal was consolidated into the instant case.

## II. DISCUSSION

**A. Thomas Has No Standing to Appeal the Gibbs/Coho Settlement**

1. Standard of Review

"In ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 207 (5th Cir. 1994) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)) (internal quotations omitted). This Court uses a permissive standard to assess the actuality of the harm alleged by appellant for the purpose of standing. *Id*.

2. Analysis

Bankruptcy courts are not authorized by Article III of the Constitution, and as such are not presumptively bound by traditional rules of judicial standing. *Rohm* , 32 F.3d at 210 n.18. Instead, standing in bankruptcy court originally was governed by the statutory "person aggrieved" test. 11 U.S.C. § 67(c) (1976) ("A person aggrieved by an order of a referee may . . . file with the referee a petition for review . . . .") (repealed 1978). Congress did not include this provision when the code was revamped in 1978. Notwithstanding its repeal, courts subsequently have found that this test continues to govern standing. *Rohm*, 32 F.3d at 210 n.18 ("Although the applicable statute has since been repealed, bankruptcy courts still limit appellate standing to those 'aggrieved.'"); *In re Hipp, Inc.*, 859 F.2d 374, 375 (5th Cir. 1988) (citing a pre-1978 case, *In re First Colonial Corp.*, 544 F.2d 1291,

1296 (5th Cir. 1977)); *see also In re Westwood Cmty. Two Ass'n*, 293 F.3d 1332, 1335 (11th Cir. 2002); *In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir. 1999).

The "person aggrieved" test is an even more exacting standard than traditional constitutional standing. *See, e.g.*, *P.R.T.C.*, 177 F.3d at 777 ("To prevent unreasonable delay, courts have created an *additional* prudential standing requirement in bankruptcy cases: The appellant must be a 'person aggrieved' by the bankruptcy court's order.") (emphasis added). The "case or controversy" limitation of Article III dictates that the alleged harm is "fairly traceable" to the act complained of. *See, e.g.*, *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 460 (5th Cir. 2001). Because bankruptcy cases typically affect numerous parties, the "person aggrieved" test demands a higher causal nexus between act and injury; appellant must show that he was "directly and adversely affected pecuniarily by the order of the bankruptcy court" in order to have standing to appeal. *In re Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983).

Thomas fails to demonstrate standing because Thomas is not "directly and adversely affected pecuniarily by" the order. *In re Cajun Elec. Power Co-op., Inc.*, 69 F.3d 746, 749 (5th Cir. 1995); *see also Rohm*, 32 F.3d at 210 n.18. In *Rohm*, a debtor that had disavowed any claims to an interpleaded fund disputed the bankruptcy court's order of priority for the distribution to debtor's creditors, arguing for standing based on the different remedies available to the each of the creditors, not all of whom would have their claims satisfied. 32 F.3d at 207. This Court denied standing because the debtor was not a claimant to the fund and, as such, was only indirectly affected by the order establishing priority. *Id*. at 212.

Thomas's claim to injury due to exhaustion of the fund through the settlement is both indirect and improbable. Even Thomas's appellate brief admits that its best argument for standing is

speculative: "[I]f it prevails on appeal, [Thomas's] interest is more than $3.4 million plus accruing attorneys' fees and interest. Because [Thomas's] interest has no ceiling given its claim for accruing attorneys' fees, the possibility exists, *albeit perhaps remotely*, that monies payable to the attorneys could exceed monies held in the registry of the court." (emphasis added). According to Coho's bankruptcy plan, three groups are entitled to a share of the Hicks Muse litigation settlement: Gibbs, Thomas and the Former Coho Shareholders. The Former Coho Shareholders' twenty-percent interest of the $8.5 million settlement equals $1.7 million. Thus, after the subtraction of the proposed Gibbs settlement and the Former Coho Shareholders' share, there would remain $4.5 million out of which to pay Thomas's high estimate of $3.4 million plus interest. A remote possibility does not constitute injury under *Rohm*'s "person aggrieved" test.

Thomas argues that because it is a claimant to the funds, the facts of *Rohm* are distinguishable and, instead, *Ergo Science, Inc. v. Martin* should apply. 73 F.3d 595 (5th Cir. 1996). In *Ergo*, the party seeking standing, ETI, was, like Thomas, a claimant of the disputed funds. *Id*. at 596. After disavowing its interest in the funds deposited in the court's registry, ETI attempted to revive its claim on the funds after it failed to settle with a creditor. *Id*. at 596–97. The court affirmed ETI's standing to object to the court's finding that it had no interest in the funds, but denied the appeal on the merits. *Id*. at 597–99. Regardless, even under *Ergo*, Thomas's conjectural injury as a claimant to the fund, described *supra*, is too tenuous to support "aggrieved person" standing.[1] The Court in *Ergo* determined that *Ergo* was "not faced with a hypothetical or indirect injury as in *Rohm*, but a real and

---

[1] Moreover, Thomas's argument fails because the arbitration was not binding and the bankruptcy court judge did not abuse his discretion in reducing Thomas's fee. That fee could not be exhausted by the proposed settlement. This conclusion is discussed *infra*.

7

immediate injury." *Ergo Science v. Martin*, 73 F.3d 595, 597 (5th Cir. 1996). Even a claimant to a fund must show a realistic likelihood of injury in order to have standing. Thomas has not done so.

Because Thomas's appeal of the Gibbs-Coho settlement fails, there are no remaining issues as to the Gibbs-Coho settlement, which was appealed to this Court as *Gibbs & Bruns, L.L.P. v. Thomas & Culp, L.L.P.*, No. 04-10173. The resolution of this case also renders moot the remaining issues with regard to Gibbs' fee in *Gibbs & Bruns, L.L.P. v. Coho Energy, Inc. v. Thomas & Culp, L.L.P.*, No. 10268. As such, the only remaining issue is the bankruptcy court's modification of Thomas's fee award.

**B. The Bankruptcy Court Appropriately Modified Thomas's Attorney's Fees Award**

1. Standard of Review

We review the award of attorneys' fees for abuse of discretion. *In re Barron*, 225 F.3d 583, 585 (5th Cir. 2000); *In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994). The legal conclusions that guided the bankruptcy court's determinations, however, we review *de novo*. *In re Barron*, 225 F.3d at 585 (citing *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir. 1999)); *Tex. Secs., Inc.*, 218 F.3d 443, 445 (5th Cir. 2000). To this end, we must be certain to determine that the discretion employed by the lower courts was based on appropriate determinations of law.

2. Analysis

Thomas argues that the arbitration to which Thomas and Coho submitted was binding and, in the alternative, that the bankruptcy court abused its discretion in reducing the award. The bankruptcy code manifests a strong policy of maintaining jurisdiction and control over the payment of professionals' fees. *E.g.*, 11 U.S.C. § 330 (setting forth the factors for "reasonable compensation" of professionals). When this fee discretion began to dissuade professionals from offering their

services to debtors, Congress passed section 328(a) of the bankruptcy code, which allowed professionals to have greater certainty as to their eventual payment. *In re Nat'l Gypsum Co.*, 123 F.3d 861, 862 (5th Cir. 1997). Under section 328(a), a fee agreement approved by the bankruptcy court could be reduced only if the terms of the contract were "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). So, even if the bankruptcy court acts to "guarantee" attorney's fees, it reserves the power to alter them. Moreover, in the instant case, the bankruptcy court did not even appear to aim to cede control over the award to the arbitration panel because it sought counsel from the arbitration panel on only three questions.

Thus, the relevant argument from Thomas is not whether or not the arbitration was found to be binding; rather, it is whether this arbitration award can be modified under the unanticipatable developments exception of 11 U.S.C. § 328(a). Thomas argues that this Court has set a high standard for proving that the terms and conditions of a professional's court-approved employment contract are improvident in light of unanticipatable developments. In *Barron*, this Court vacated the bankruptcy court's reduction of the fees of an attorney's court-approved contract because that court used the wrong legal standard. 225 F.3d at 586. The bankruptcy court corrected its mistake on remand, identifying specific developments that it had not anticipated. *In re Barron*, 325 F.3d 690, 693 (5th Cir. 2003) (explaining that the bankruptcy court indicated that it had not anticipated (1) the amount of the recovery, (2) the relative ease of the success, and (3) the ease of collection). Again this Court reversed, noting that no reason was given that these developments could not be anticipated, and that, therefore, the lower court had abused its discretion by finding these facts to be developments incapable of being anticipated. *Id*.

9

This Court has iterated the improvident exception rule on a number of occasions and in several different contexts, including (1) the interplay between Section 328 and Section 330, *see, e.g.*, *In re Nat'l Gypsum Co.*, 123 F.3d 861, 862–63 (5th Cir. 1997); (2) the correct standard for the improvidence exception, *see, e.g.*, *Barron*, 225 F.3d at 586; and (3) mandating the presence of findings, *see, e.g.*, *Tex. Secs.*, 218 F.3d at 446. When *Barron* returned to this Court on appeal, with the original "unforeseen developments" recast as developments incapable of being anticipated, this Court rejected the bankruptcy court's reasoning. *Barron*, 325 F.3d at 694. That case gives guidance, however, only as to what developments do *not* fall into the category in the statute of "not capable of being anticipated":

> First, that it "did not anticipate the substantial amount of the subsequent recovery;" second, that the adversary proceedings became a "slam dunk;" and third, that the judgment was collected from Mr. Barron with "relative ease." The bankruptcy court stated that it did not actually anticipate these developments at the time, but, apparently because of the lack of clarity in our previous opinion, it failed to explain why these developments were incapable of being anticipated at the time the award was approved. We hold, as a matter of law, that none of these facts or developments was "not capable of being anticipated" within the meaning of Section 328(a).

*Id*.

The final order of the bankruptcy court in the instant case used the correct legal standard and cited three developments not capable of being anticipated: "(1) the arbitration panel finding that [Thomas] was terminated for 'cause;' (2) the amount of hours that [Thomas] had put into the case prior to [Gibbs] employment, which was not known to the Debtor or the Court at the time [Gibbs's] employment application was approved; and (3) the amount of compensation under *quantum meruit* found by the arbitration panel . . . ." In its appeal, Thomas does not argue effectively as to why the bankruptcy court did not appropriately categorize these developments as unanticipatable. As to the size of the quantum meruit compensation awarded by the arbitration panel, which was 114% the size

10

of the full contingency fee that Thomas would have received if it had seen the case to completion, Thomas simply states, "it is anticipatable that a judge might disagree with the results of arbitration . . . ."

Although *Barron* set a high standard for a Section 328(a) adjustment, the findings of the bankruptcy court in the instant case, employing the correct legal standard, do not amount to an abuse of discretion. One of the findings of the arbitration panel was that the full amount Thomas would be entitled to under the contract would be $5.9 million. This shows that the arbitration panel was operating on the assumption that the total settlement would be approximately $20 million. That the arbitration panel would be kept so ill-informed as to use figures two and a half times in excess of the actual amount qualifies as an unanticipatable development within the discretion of a bankruptcy court's findings of fact.

### III. CONCLUSION

For the foregoing reasons, Thomas's appeal of the Coho-Gibbs settlement is DISMISSED and the decision of the district court regarding Thomas's fees is AFFIRMED.